IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| SDM AUTOMOTIVE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT**

Nissan North America, Inc. ("Nissan" or "Plaintiff") for its Complaint against Defendant, SDM Automotive, LLC, ("SDM") states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Nissan North America, Inc., is a corporation organized under the laws of the State of California with its principal place of business in Nashville, Tennessee.

2. Upon information and belief, Defendant SDM Automotive, LLC, is a limited liability company organized under the laws of the State of California with its principal place of business in Westlake Village, California.

3. This action principally arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has subject matter jurisdiction over the federal causes of action pursuant to 28 U.S.C. §§ 1331, 1337 and 1338, and supplemental subject matter jurisdiction over the state causes of action pursuant to 28 U.S.C. § 1367. Nissan seeks, *inter alia*, preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65.

4. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

5. Nissan is the sole distributor of Infiniti vehicles, parts, and accessories throughout the United States, including in the State of Tennessee. In furtherance of these efforts, Nissan is the authorized licensee of the Infiniti trademarks and logos in the United States, which are registered on the Principal Register of the United States Patent and Trademark Office.

6. In 1989, Nissan launched the Infiniti brand of vehicles in the United States. Over the past 18 years, Infiniti vehicles have emerged as leaders in the luxury vehicle market in the United States, with a stellar reputation for quality and customer satisfaction. Infiniti vehicles have won numerous "Best in Class" industry awards from influential third party market research firms, including J.D. Power and Associates, and from such important industry publications as *AutoWeek, Auto World, Automobile Magazine, Car and Driver, Motor Trend*, and *Road and Track*. J.D. Power and Associates has ranked Infiniti as the best customer service brand in the United States on no less than three occasions.

7. Since 1989, Nissan has sold more than one million new Infiniti vehicles in the United States.

8. Nissan has advertised Infiniti vehicles in all forms of media, including network and cable television, radio, magazines, newspapers, billboards, by direct

2

marketing, at auto shows, and via the Internet. Nissan has also promoted Infiniti vehicles in connection with various sporting events, including the Indianapolis 500 and Indy Racing League events. Nissan has further continuously distributed brochures promoting Infiniti vehicles through its dealer network.

9. In connection with its promotion of the Infiniti vehicles via the Internet, Nissan has constructed a website having the domain name <infiniti.com>. This website includes a "Build Your Infiniti" function, by which prospective customers can select the vehicle, model, color, and options for a new automobile. Customers may then request a quote from a nearby dealer. Currently, the <infiniti.com> website receives over 10 Million visitors annually and is an active component in Nissan's marketing of the Infiniti brand.

10. As a result of Nissan's substantial use of the Infiniti trademarks, those marks have achieved a high level of consumer awareness in the United States luxury vehicle market. Common law trademark rights inhere in these marks by virtue of Nissan's use of them in commerce in the United States.

11. In 1988, the USPTO registered the Infiniti name as a trademark in connection with motor vehicles under U.S. registration no. 1478618. In 1990 and 1998, the USPTO registered the Infiniti name as a trademark in connection with, among other things, financing services for the purchasing and leasing of luxury automobiles and automobile dealership services under registration nos. 1625201 and 2160715. These trademarks have since become incontestable based on Nissan's continuous use of the marks as a licensee.

3

12. In 1990 and 1991, the USPTO registered the Infiniti logos as trademarks in connection with motor vehicles under U.S. registration nos. 1621098 and 1632276. Those trademarks have since become incontestable based on Nissan's continuous use of the marks as a licensee. The trademarks and logos identified in this and the preceding paragraph are hereinafter collectively referred to as the "INFINITI" marks.

13. As a result of Nissan's extensive and high-profile promotion of the INFINITI marks in the United States, these marks have become instantly recognizable throughout the United States as symbols of Nissan's high-quality, branded luxury vehicles. Nissan has thus established substantial goodwill in the INFINITI marks, and consumers throughout the United States associate the INFINITI marks with the various vehicles sold by Nissan in the United States.

14. On or about February 12, 2007, Defendant SDM registered the domain name <infinitibids.com>. The content of the website at that address makes use of the INFINITI marks. The website also indicates that the name is the doing-business as designation of SDM. Further, the name "InfinitiBIDS" bears the trademark symbol. (True and correct copies of printouts of the <infinitibids.com> website are attached as collective Exhibit A.)

15. SDM has directly promoted the <infinitibids.com> website to dealers of Infiniti automobiles, including to dealers in the State of Tennessee. According to these promotional materials, prospective customers pay a fee to "build" their ideal Infiniti. Participating dealers can then log into the website in order to place a bid to sell the vehicle configured by the customer. SDM's promotional materials indicate that this program is "An Infiniti Exclusive" and represent that the <infinitibids.com> concept does

4

not violate Nissan's "Infiniti Dealer Advertising Reimbursement Programs". According to SDM's promotional materials, dealers had the opportunity to join <infinitibids.com> beginning April 4, 2007, and the website was announced to the public on May 1, 2007. (True and correct copies of SDM's promotional materials are attached as collective Exhibit B.)

16. Following the distribution of SDM's promotional materials, authorized dealers of Infiniti vehicles, who have a high level of sophistication regarding Nissan's branding practices and marketing channels, have contacted Nissan to inquire whether the <infinitibids.com> website is sponsored or authorized by Nissan. Nissan believes, upon information and belief, that further confusion among Infiniti dealers and buyers is likely to continue.

17. SDM's unauthorized use of the INFINITI marks in its doing-business-as designation, in its promotional materials, in the content of its website, and in its domain name <infinitibids.com> violates Nissan's trademark rights. SDM's prominent use of the INFINITI marks in the content of its website and promotional materials, will likely cause confusion, or to cause mistake, or to deceive members of the public as to the affiliation, connection, or association of Defendant and Plaintiff, and to the origin, sponsorship, authorization or approval of Defendant's website and services by Plaintiff. Additionally, Customers and prospective customers who attempt to locate Nissan's Infiniti division on the Internet, will, unless Defendant is immediately enjoined, be mistakenly directed to Defendant's website. SDM's use of the INFINITI marks in its doing-business-as designation, in its promotional materials, in the content of its website, in its domain name

5

<infinitibids.com> further dilutes the value of the marks and jeopardizes the goodwill therein.

18. Within weeks of first learning of SDM's unlawful activities, by letter dated May 17, 2007, Nissan notified SDM in writing that SDM's use of the INFINITI marks infringes and dilutes Nissan's extensive rights in those marks. (A true and correct copy of Nissan's cease and desist letter is attached as Exhibit C.) SDM responded by email on May 23, 2007, seemingly disputing that its use of the INFINITI marks infringes upon Nissan's rights or harms Nissan. (A true and correct copy of SDM's response email is attached as Exhibit D.) To date, SDM continues its wrongful use of the INFINITI marks.

## CAUSES OF ACTION

### COUNT I – FEDERAL TRADEMARK INFRINGEMENT

19. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

20. SDM's use of the INFINITI marks is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

21. SDM's use of the INFINITI marks constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Nissan to an injunction, treble its damages, SDM's profits made from its infringing use of the INFINITI marks and increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

22. SDM's intentional, deliberate and willful use of the INFINITI marks with knowledge of Nissan's rights in said marks, constitutes a willful violation of 15 U.S.C. §

6

1114(1) and renders this case exceptional, entitling Nissan to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II - FALSE DESCRIPTION AND REPRESENTATION OF ORIGIN, SPONSORSHIP, OR APPROVAL AND UNFAIR COMPETITION UNDER LANHAM ACT § 43(A)

23. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

24. SDM's use of the INFINITI marks is likely to cause confusion, or to cause a mistake, or deceive as to the affiliation, connection or association of SDM with Nissan, and as to the origin, sponsorship or approval of SDM's products or services by Nissan. Additionally, the public is likely to believe that SDM's products and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with Nissan, all to Nissan's irreparable harm and in violation of 15 U.S.C. § 1125(a).

25. SDM is knowingly infringing the INFINITI marks in violation of the rights of Nissan.

26. The use by SDM of the INFINITI marks as described above, is likely to cause and has caused confusion as to the source of these goods and services and constitutes a false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Nissan to an injunction, treble its damages, SDM's profits made from its infringing use of the INFINITI marks and increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

7

Case 3:07-cv-00601   Document 1   Filed 05/31/07   Page 7 of 13 PageID #: 35

27. SDM's intentional, deliberate and willful use of the INFINITI marks with knowledge of Nissan's rights in said marks, constitutes a willful violation of 15 U.S.C. § 1125(a) and renders this case exceptional, entitling Nissan to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III – DILUTION UNDER LANHAM ACT, § 43(c)

28. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

29. The INFINITI marks are distinctive and famous marks within the meaning of 15 U.S.C. §1125(c) by virtue of their inherent and acquired distinctiveness, the long duration and wide extent of their use, the long duration and wide extent of the advertising and publicity of the marks, the geographic extent of the trading area in which the marks are used, the channels of trade in which the marks are used, the high degree of recognition of the marks in the trading channels and channels of trade used by Nissan, the non-existent use of the marks or similar marks by others, and the long standing federal registrations of the marks.

30. Defendant's unauthorized use of the INFINITI marks unlawfully dilutes the distinctive quality of the marks in violation of the Federal Dilution Act, 15 U.S.C. § 1125. Unless immediately enjoined, Defendant's unlawful use will result in (i) the lessening of the capacity of the INFINITI marks to identify and distinguish Nissan's goods and services; and (ii) injury to Nissan's investment in the INFINITI marks and Nissan's business reputation for which Nissan has no adequate remedy at law.

31. Defendant's unauthorized use of the INFINITI marks constitutes dilution under 15 U.S.C. § 1125(c), and Nissan is entitled to temporary, preliminary, and

8

permanent injunctive relief prohibiting such further use, damages and its attorneys' fees pursuant to the provisions of 15 U.S.C. §§ 1116, 1117, and 1125(c).

## COUNT IV – VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

32. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

33. Nissan is the licensee of the INFINITI marks. The INFINITI marks are distinctive and famous.

34. SDM has a bad faith intent to profit from the marks by using them to collect fees from customers who are likely to believe that SDM's services are sponsored, authorized or approved by Nissan.

35. SDM is using a domain name that contains the INFINITI trademark in its entirety.

36. Nissan has been damaged on account of the Defendant's conduct.

## COUNT V – TENNESSEE COMMON LAW TRADEMARK INFRINGEMENT

37. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

38. Nissan owns and enjoys trademark rights in the INFINITI marks pursuant to the common law of the State of Tennessee. The use by Defendant of the INFINITI marks as described above constitutes infringement of Nissan's trademark rights pursuant to the common law of the State of Tennessee, for which infringement Nissan is entitled to any and all remedies available to her under the common law of the State of Tennessee.

9

## COUNT VI – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

39. Nissan adopts and incorporates by reference the preceding paragraphs as if fully stated verbatim herein.

40. Defendant's infringing use of the INFINITI marks as described above violates the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et. seq., including but not limited to Tenn. Code Ann. §§ 47-18-104(a), (b)(1), (2), (3), (5), (7), (21), and (27), for which the Defendants are liable to Nissan in damages, including treble damages, and for Nissan's reasonable attorneys' fees and costs, pursuant to Tenn. Code Ann. § 47-18-109, and for which an injunction should be issued against the Defendants enjoining any further use of the INFINITI marks.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that:

1. Defendant, and all persons in active concert and participation with it, be temporarily, preliminarily and permanently enjoined from using the INFINITI marks or any mark that is similar in appearance to Plaintiff's INFINITI marks (1) as part of any trademark, service mark, trade name, corporate name, or assumed name; (2) as part of any and all websites and promotional materials, (3) as part of any internet domain name, title, description, key words, source codes, tags, meta tags, banners, links, email addresses, and any other use for the purpose of directing Internet traffic; and (4) in any other manner in connection with commerce, business, products, or services within the United States.

10

Case 3:07-cv-00601   Document 1   Filed 05/31/07   Page 10 of 13 PageID #: 38

2. In accordance with the Lanham Act, including the Anti-Cybersquatting Consumer Protection Act and pursuant to 15 U.S.C. §§ 1116, 1117 and 1125(d), that (1) an immediate injunction issue (a) prohibiting Defendant further use of the <infinitibids.com> website and various <infinitibids.com> email addresses, and (b) transferring the domain name to Nissan; and (2) awarding Nissan its actual damages, or statutory damages at its election, and its attorneys' fees and costs.

3. Defendant be temporarily, preliminarily and permanently enjoined, from expressly or by implication, representing that Defendant is affiliated with, or authorized, licensed, endorsed or sponsored by Plaintiff.

4. Defendant be required to deliver up for impoundment and for destruction all infringing materials, labels, or other goods or printed or electronically stored matter using any unauthorized colorable imitation of the INFINITI marks or any other mark that is similar to Plaintiff's mark.

5. Defendant be directed to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of a final injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

6. An accounting be ordered and judgment rendered against Defendant and for Plaintiff for any profits received from Defendant's infringement, violation of consumer protection acts or other improper activity, and that such profits be enhanced pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117 (a) and applicable state law.

7. Judgment be entered against Defendant and in favor of Plaintiff for damages sustained on account of Defendant's infringement, dilution, violation of the

11

Case 3:07-cv-00601  Document 1  Filed 05/31/07  Page 11 of 13 PageID #: 39

Anti-cybersquatting Consumer Protection Act, violation of the Tennessee Consumer Protection Act, or other improper activity, and that such damages be trebled pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117 (a) and applicable state law, including the Tennessee Consumer Protection Act.

8. Defendant be required to pay to Plaintiff the costs in this suit, and reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117 (a) and applicable state law, including the Tennessee Consumer Protection Act.

9. Plaintiff have such other and further relief, including without limitation, equitable relief, as the Court deems just and proper.

Respectfully submitted,

Joel T. Galanter
Adams and Reese LLP
424 Church Street, Suite 2800
Nashville, TN 37219
Telephone: 615/259-1450

*Attorneys for Plaintiff*

12

## VERIFICATION

I, Michael J. Fischer, am the Director, Marketing Communications of Nissan North America, Inc., and have personal knowledge and/or knowledge gained in my official capacity of the facts set forth in paragraphs 1, 5-16, 18 of the foregoing Complaint and hereby declare under penalty of perjury that they are true and correct to the best of knowledge, information, and belief.

EXECUTED at Nashville, Tennessee, on May 31, 2007.

_____